**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 12, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

SHAIDON BLAKE,

    Plaintiff - Appellant,

v.

(FNU) WALLACE; (FNU) GORMAN;
(FNU) CHASTAIN; CENTURION
HEALTH SERVICES,

    Defendants – Appellees,

and

CHRISTIAN (LNU),

    Defendant.

No. 22-3163
(D.C. No. 5:21-CV-03046-JWL-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **FEDERICO**, Circuit Judges.
_____

Plaintiff-Appellant Shaidon Blake appeals from the district court's dismissal,

pursuant to its screening function, of his civil rights claims for failure to state a

claim.  28 U.S.C. § 1915A(b)(1).  Blake v. Wallace, No. 21-3046-SAC, 2022 WL

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

3444782 (D. Kan. Aug. 17, 2022).  Mr. Blake brought Fourth, Eighth, and Fourteenth

Amendment claims against the Defendants.[1]  The district court dismissed the claims after

issuing an order to show cause and obtaining a Martinez report.  On appeal, Mr. Blake

argues that the district court erred (1) in relying upon the Martinez report to resolve

factual disputes, (2) dismissing his Fourteenth Amendment forced medication claim

where the corrections officers invented a medical condition, (3) dismissing his Eighth

Amendment claim where the officers exposed him to medically unnecessary narcotics

and COVID-19, and (4) failing to grant leave to amend.  Aplt. Supp. Br. at 1–2.  Our

jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

## Background

At the time of his complaint, Mr. Blake was a Maryland state prisoner at the El

Dorado Correctional Facility in El Dorado, Kansas.  Mr. Blake alleged that he was

forced into a restraint chair and given injections of morphine and fentanyl upon his

refusal to go to the hospital for treatment for a possible stroke.  I R. 9–15.  He seeks

compensatory, punitive, and unspecified injunctive relief.  Id. at 15.  Responding to

the district court's order to show cause, Mr. Blake added a retaliatory motive theory,[2]

specifically, that due to his pending legal matters, decisions were made to restrain

---

[1] Mr. Blake does not appeal the dismissal of his Fourth Amendment claim.
Aplt. Supp. Br. at 12 n.12.  He also has abandoned his claims against Centurion
Health Services.  Aplt. Reply Br. at 2 n.1.  Accordingly, the Fourth Amendment
claim is not before us, and the dismissal of Centurion must be affirmed.

[2] Mr. Blake is not pursuing conspiracy or retaliation claims.  Aplt. Reply Br. at
2.  He argues that he was not required to plead facts tending to show a conspiracy or
retaliation, but such facts make his claims more plausible.  Aplt. Reply Br. at 2.

him and send him to the hospital.  I R. 35.  According to Mr. Blake, Nurse Christian

while working for Centurion Health Services, requested the injections and her care

was grossly flawed.  I R. 12–13, 35, 96.

**Discussion**

Our review is de novo.  Young v. Davis, 554 F.3d 1254, 1256 (10th Cir. 2009).

Well-pleaded factual allegations are accepted as true and construed in the light most

favorable to the plaintiff.  Id.  The complaint must have sufficient factual matter "to

state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (internal quotation marks omitted).  To meet this standard, the plaintiff

must "plead[] factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  Id.  Pro se pleadings are

construed liberally, but we cannot act as the pro se litigant's advocate.  See Hall v.

Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

**A.  Request for Injunctive Relief and Official Capacity Claims**

As an initial matter, Mr. Blake's request for injunctive relief is moot as he is

no longer in Kansas custody.  Mr. Blake was transferred to the North Branch

Correctional Institution in Maryland.  Aplee. Br. (Wallace, Gorman, & Chastain) at

12 n.5; see also Blake v. Maryland, No. DLB-24-0697, 2024 WL 2053494, at *1 (D.

Md. May 7, 2024) (denying federal habeas petition after noting his custody in

Maryland).  At oral argument, Mr. Blake's counsel informed us that he is currently in

Illinois custody.  Mr. Blake argues that he has been transferred between Kansas and

Maryland repeatedly.  Aplt. Supp. Br. at 27.  However, in Green v. Branson, 108 F.3d

1296, 1299 (10th Cir. 1997), we cited with approval McKinnon v. Taladega County, 745 F.2d 1360, 1363 (11th Cir. 1984), which held that a request for declaratory and injunctive relief was moot even in the absence of any assurance that the inmate would not be returned to the county jail. At oral argument, Mr. Blake's counsel relied on Washington v. Harper, 494 U.S. 210 (1990), to argue that his claims are not moot due to his transfer out of Kansas. Here, however, we lack a "strong likelihood" that Mr. Blake will be transferred from another state to Kansas for medical care. See id. at 218–19.

Additionally, given the claim for damages, Mr. Blake cannot proceed against the state corrections officers in their official capacities. See 28 U.S.C. § 1915(e)(2)(B)(iii); Kentucky v. Graham, 473 U.S. 159, 166–67 (1985). However, we agree with Mr. Blake that whether these defendants are being sued in their individual capacities could be clarified with an amended complaint. See Pride v. Does, 997 F.2d 712, 715–16 (10th Cir. 1993).

**B. Use of the Martinez Report and the Video Evidence**

Notwithstanding, even if the corrections defendants are sued in their individual capacities, the district court's decision must be affirmed. Essentially, Mr. Blake argues that the district court utilized the Martinez report to resolve disputed facts and discount his allegations. Of course, the Martinez report cannot be used to resolve material factual disputes when in conflict with pleadings or affidavits. Hall, 935 F.2d at 1111. But Mr. Blake remains responsible for pleading enough facts that "nudge[] . . . [his] claims across the line from conceivable to plausible[.]" See Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007).  We have observed that pro se plaintiffs require no special training in recounting the facts.  Hall, 935 F.2d at 1110.

On appeal, Mr. Blake contends that placing him in a restraint chair,[3] medicating him, and sending him to the hospital were part of a pattern of retaliating against him for his grievances and suits against prison officials.  Aplt. Supp. Br. at 6–9.  In his complaint, he alleged that Nurse Christian while working for Centurion Health Services made the decision to send him to the hospital based upon an observation that he was having a stroke and her assessment was incorrect because he demonstrated no stroke symptoms.  I R. 12.  He also contends that Nurse Christian suggested to the EMTs that he be medicated.  I R. 35, 196.

We first observe that Mr. Blake does not really challenge the background facts (from the Martinez report) insofar as he was in some distress, Officer Gorman called Nurse Christian, Mr. Blake then was escorted to the cellhouse clinic room, and Nurse Christian conferred with the on-call physician.  I R. 316.  The essence of the dispute centers upon the rejection of his theory that the medical care decisions were pretextual, retaliatory, and against his insistence that he receive no medical care.  In his complaint, Mr. Blake references a video recording of the incident which captures most of the action.  1 R. 12.  The parties and the district court relied upon the video.  See Aplt. Reply Br. at 22 (arguing that the video in the Martinez report may properly

---

[3] Mr. Blake subsequently abandoned his Eighth Amendment claim for excessive force based upon placing him in the restraint chair.  Aplt. Reply Br. at 20 n.7.

be used to supplement the complaint).  We have held that undisputed parts of a

Martinez report may be considered like a written document attached to the complaint.

Hall, 935 F.2d at 1112–13.  We conclude that it is proper to consider the video

evidence, notwithstanding Mr. Blake's reporting the videographer for an earlier racist

joke and his claim that it may not have captured everything.  Where the video

evidence blatantly contradicts a material factual allegation, we may disregard that

allegation in favor of what is actually depicted on the video.  Cf. Scott v. Harris, 550

U.S. 372, 380–81 (2007).

### C.  Personal Participation

In analyzing Mr. Blake's claims, we must consider the personal participation

of each defendant acting under color of state law; mere presence at the scene is

insufficient.  See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Collective

allegations of violation of constitutional rights are insufficient in the absence of

identifying specific actions by particular defendants.  Pahls v. Thomas, 718 F.3d

1210, 1225–26 (10th Cir. 2013).  So too are conclusory claims of conspiracy and

retaliation.  Ashcroft, 556 U.S. at 680–81.  Moreover, to claim that a supervisor is

liable for a constitutional violation, there must be an underlying constitutional

violation by a subordinate as well as some personal involvement by the supervisor,

causation, and state of mind.  Wise v. Caffey, 72 F.4th 1199, 1210 (10th Cir. 2023).

The district court ultimately determined that Mr. Blake had not adequately

alleged personal participation in any constitutional violation regarding corrections

officers Gorman and Chastain.  I R. 318–19.  Given the claims before us, we agree.

Although noting this issue in the supplemental opening brief, Mr. Blake addresses collective action on the part of the Defendants. Aplt. Supp. Br. at 21. Although in reply, Mr. Blake argues that the various defendants should be held liable for taking him from his cell, restraining him, disregarding his requests to refuse treatment, and lying to the EMTs about his condition, Aplt. Reply Br. at 22, these undifferentiated assertions come too late and lack factual development.

### D. Eighth and Fourteenth Amendment Claims

We next consider the various underlying principles that animate Eighth Amendment claims of excessive force, deliberate indifference to serious medical needs, and Fourteenth Amendment claims of involuntary medication. Ashcroft, 556 U.S. at 675. To make out a claim that officers applied excessive force in violation of the Eighth Amendment, a plaintiff must allege facts addressing "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Physical injury is not required, but the force must be "objectively harmful enough to establish a constitutional violation[.]" Wilkins v. Gaddy, 559 U.S. 34, 37–38 (2010); Redmond v. Crowther, 882 F.3d 927, 936 (10th Cir. 2018). Factors to be considered include the officers' reasonable perceptions of the threat and the "relationship between that need and the amount of force used" and efforts to temper such force. Hudson, 503 U.S. at 7.

An Eighth Amendment claim regarding deficient medical care requires allegations tending to show "acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97,

106 (1976). The Court has stated that

> a prison official cannot be found liable under the Eighth Amendment for
> denying an inmate humane conditions of confinement unless the official
> knows of and disregards an excessive risk to inmate health or safety; the
> official must both be aware of facts from which the inference could be
> drawn that a substantial risk of serious harm exists, and he must also
> draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994).

We recognize that Mr. Blake has a significant liberty interest protected by the

Fourteenth Amendment in avoiding unwanted treatment by prison officials and that

any such treatment must be reasonably related to legitimate penological interests.

Washington v. Harper, 494 U.S. 210, 223–24 (1990). The institution has a

responsibility to undertake treatment not only for the inmate's medical interests, but

also consistent with the needs of the institution. Id. at 225. We have relied upon the

following formulation in assessing claims of involuntary treatment:

> [A] prison may compel a prisoner to accept treatment when prison
> officials, in the exercise of professional judgment, deem it necessary to
> carry out valid medical or penological objectives. As in the case of
> mental institution authorities, the judgment of prison authorities will be
> presumed valid unless it is shown to be such a substantial departure
> from accepted professional judgment, practice or standards as to
> demonstrate that the person responsible actually did not base the
> decision on such judgment.

White v. Napoleon, 897 F.2d 103, 113 (3rd Cir. 1990). See Lowery v. Honeycutt,

211 F. App'x 709, 712 (10th Cir. 2007) (unpublished).

**E. The Law Applied**

With those standards in mind, we turn to individual liability. The district court

determined that prison officials could not be liable for using force to carry out the directive to go to the hospital for an evaluation. Mr. Blake now contends that his Eighth Amendment excessive force claim relates to his forced medication claim. Aplt. Reply Br. at 20 n.7. Even assuming that this was raised, and accepting the EMT's statement that Mr. Blake was medicated for pain, no facts alleged suggest a malicious and sadistic desire to cause harm on the part of any Defendant.

To the contrary and germane to the Eighth Amendment claim relating to medical care, we agree with the district court that despite Mr. Blake's allegations that he was administered narcotics and taken to the hospital for an evaluation as a pretext for retaliation, his pleadings do not raise this theory to a plausible one given the video evidence and underlying constitutional standards. The EMTs administered the specific narcotics, not the Defendants. P903002 at 1:40–6:07. The contention that the EMTs were duped based upon the retaliatory motive of the prison staff is belied by the entirety of the interaction including an EMT questioning the officers and Nurse Christian about Mr. Blake's condition. We note that the officers and medical personnel attempted to reassure Mr. Blake that given his reported symptoms, heart issues, and prior stroke, it would be best to get checked out. To be sure, Mr. Blake was anxious, expressed that he did not want to go to the hospital given his dislike of needles and fear of contracting Covid-19, and apparently returned without a stroke diagnosis. He reminds us that administration of narcotics in a prison is unusual for obvious reasons. None of this, however, suggests that any Defendant was deliberately indifferent. To the contrary, given how Mr. Blake presented, including

his extreme anxiety, a prior stroke, a report of slurred speech, the on-call doctor's

recommendation, the video evidence at best suggests a difference of opinion about

treating Mr. Blake.  It simply does not show an effort to retaliate against Mr. Blake,

no matter how forcefully Mr. Blake argues otherwise.

Medical decisions do not represent cruel and unusual punishment.  Estelle, 429

U.S. at 107.  We recently noted "the reality that doctors constantly deal with

probabilities and make medical decisions in the face of risk."  Estate of Hurtado by &

through Hurtado v. Smith, 119 F.4th 1233, 1239 (10th Cir. 2024).  For similar

reasons, with respect to Mr. Blake's Fourteenth Amendment claim, no specific facts

suggest a substantial departure from accepted professional judgment, practice or

standards as to demonstrate that any Defendant actually did not base the decision on

such judgment at the time the decision was made.  In fact, Defendants acted with

knowledge of Mr. Blake's extensive medical history in mind.

### F.  Leave to Amend

Finally, we reject the assertion that the district court erred by not sua sponte

allowing Mr. Blake leave to amend.  The district court earlier in the proceedings

denied Mr. Blake leave to amend his complaint reasoning that the claims and parties

did not appear to involve the events here and that no proposed amended complaint

had been submitted.  I R. 80.  Understandably, the district court was reluctant to

expand the contours of the complaint to address numerous other incidents not directly

related to the claims here.  On appeal, Mr. Blake claims that he could add a First

Amendment claim and should be allowed to amend to address any deficiencies in the

complaint.  Notwithstanding Fed. R. Civ. P. 15(a)(2) and the liberal policy of amendment when justice so requires, <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962), Mr. Blake has produced voluminous pleadings and not cured the inherent deficiencies recognized by the district court.  Accordingly, we find no error in the district court's dismissal without granting leave to amend.

**AFFIRMED.**

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge